THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEATHER DIME, | CASE NO. C24-0827-JCC |
| Plaintiff, | ORDER |
| v. | |
| METROPOLITAN LIFE INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on Rule 52 cross motions seeking final judgment (Dkt. Nos. 18, 21).[1] Having thoroughly considered the briefing and the relevant record, the Court GRANTS Plaintiff's motion (Dkt. No. 18) and DENIES Defendant's motion (Dkt. No. 21) for the reasons explained herein.

I.  BACKGROUND

  A.  The Policy

During the relevant period, Plaintiff Heather Dime was employed as a Director of Administration for Bordeaux Wealth Advisors ("Bordeaux"), a wealth management firm with offices in Silicon Valley and Seattle. (Dkt. No. 17-2 at 63–64, 67.) Bordeaux provides its

---

[1] Such motions are based on an administrative record in an Employee Retirement Income Security Act ("ERISA") dispute. (*See generally* Dkt. Nos. 17-1, 17-2) (administrative record).

ORDER
C24-0827-JCC
PAGE - 1

employees with an employment benefit plan (hereinafter the "Plan"). It is established by ADP TotalSource, Inc. and funded by a group insurance policy issued by Defendant Metropolitan Life Insurance Company ("MetLife"). (*See* Dkt. Nos. 18 at 4, 21 at 2.) The Plan is governed by ERISA, 29 U.S.C. §§ 1001 *et seq*. (*See* Dkt. Nos. 18 at 1, 21 at 2.) It pays out long-term disability ("LTD") benefits to employees if they meet the following disability definition:

> [D]ue to **Sickness** or as a direct result of accidental injury:
>
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
>
> - during the **Elimination Period** and the next 24 months of Sickness or accidental injury, You are unable to earn more than 80% of Your Predisability Earnings at Your **Own Occupation** from any employer in the National Economy; and
>
> - unable to perform each of the material duties at Your **Own Occupation** for any employer in the National Economy for which You are reasonably qualified taking into account Your training, education and experience.

(Dkt. No. 17-2 at 492) (emphasis added). The Plan further defines the bolded terms as follows: "**Sickness** means illness, disease or pregnancy, including complications of pregnancy," (*id*. at 496); "**Elimination Period** means the period of Your Disability during which We do not pay benefits. The Elimination Period begins on the day You become Disabled and continues for [90 days]," (*id*. at 493; *see also id*. at 491) (setting the 90-day Elimination Period); and "**Own Occupation** means the essential functions You regularly perform that provide Your primary source of earned income," (*id*. at 494).

### A. Plaintiff's Medical Condition

Plaintiff has a history of abdominal and pelvic abnormality, dysfunction, and pain. (Dkt. No. 18 at 5; *see also* Dkt. No. 17-1 at 727) ("[Plaintiff] has had a long-term history of chronic abdominal distention/pain . . . which has eluded a diagnosis"). As such, over the past decade or so, Plaintiff has undergone a variety of medical procedures including a colonoscopy, hernia repair, an appendectomy, a hysterectomy, (*see id*. at 740), and most recently a "[l]aparoscopic

right ovarian cystectomy," (*id*. at 989).

Plaintiff's LTD claim, which is at issue in this case, is based on her most recent flare of symptoms. Around July 2023, Plaintiff began "having significant right groin area pain," which was "primarily aggravated by sitting, and walking around/doing activity." (*Id*. at 728.) The pain was so intense that Plaintiff "had to take time off work and fe[lt] like she [was] homebound due to this pain." (*Id*.) It was, however, "somewhat alleviated by lying down." (*Id*.) At first, Plaintiff's medical providers attributed the pain to an ovarian cyst, which resulted in the aforementioned ovarian cystectomy. (*See* Dkt. No. 17-2 at 126.) Plaintiff underwent the cystectomy on September 6, 2023. (*Id*. at 118.) Had the cystectomy resolved the underlying issue, Plaintiff would have been cleared for full-time work on October 4, 2023. (*Id*. at 119.)

Instead, Plaintiff's pain continued. For instance, on October 31, 2023—almost four weeks after Plaintiff's purported return-to-work date—her primary care provider, Dr. Penny Li, noted that Plaintiff continued to experience "**severe right inguinal pain**" that was "worse with sitting, standing and walking." (Dkt. No. 17-1 at 721) (emphasis added). Later, on January 21, 2024, Dr. Li wrote that Plaintiff still suffered "from **chronic right inguinal pain** of unclear origin" that "ma[de] it impossible for her to complete 8-hours of work within an 8 hour [sic] workday." (*Id*. at 503) (emphasis added). And again, on February 26, 2024, Dr. Li explained that Plaintiff "requires time off from work to pursue further medical evaluation and treatment for **severe right inguinal pain and bloating**." (*Id*. at 399–400) (emphasis added).

B.   **Plaintiff's LTD Benefits Application**

Plaintiff submitted her initial LTD claim around August or September 2023. (*Compare* Dkt. No. 17-1 at 519, *with* Dkt. No. 17-2 at 33) (the former reflects a claim submission date of August 2023 while the latter reflects one of September 2023). In any event, after receiving the claim, MetLife sourced Plaintiff's medical records from various health care providers; these records dated from February 1, 2023, through October 31, 2023. (Dkt. No. 17-1 at 519.) MetLife then sought review of the documents from an Independent Physician Consultant ("IPC"), Dr.

Hossein Molazadeh. (*Id.*; *see also id.* at 535–43) (Dr. Molazadeh's report). MetLife also referred Plaintiff's claim to a Vocational Rehab Consultant ("VRC") to conduct an "Own Occupation Analysis." (*Id.* at 520.) Then, on December 13, 2023, MetLife denied Plaintiff's claim. (*See id.* at 519.) MetLife's determination rested on a combination of Dr. Molazadeh's report and the VRC's "Own Occupation Analysis." (*Id.* at 519–20.)

As a threshold matter, MetLife determined that Plaintiff's LTD benefits start date (*i.e.*, the date of completion for the Elimination Period) was December 5, 2023. (*See* Dkt. Nos. 17-1 at 519, 17-2 at 145.) It also classified Plaintiff's "Own Occupation" as "sedentary demand work." (Dkt. No. 17-1 at 520.) It then highlighted Dr. Molazadeh's conclusion that, from September 28, 2023, onward, Plaintiff's restrictions and limitations consisted primarily of "Sitting: Frequently, for up to 4 hours per day," "Standing: Frequently, for up to 3 hours per day," and "Walking: Occasionally, for up to 2 hours per day." (*Id.* at 542.) MetLife similarly highlighted the VRC's conclusion that "with a reasonable accommodation of a sit/stand desk [Plaintiff has] the functional capacities to perform each of the material duties of [her] Own Occupation." (*Id.* at 520.) Taken together, MetLife found Plaintiff's condition did not impede her ability "to work through [her] entire Elimination Period of 90 days and beyond," and thus Plaintiff failed to meet the Plan's definition of disability. (*Id.*)

Missing from MetLife's determination were the following: (1) Dr. Molazadeh's conclusion that these restrictions were warranted at least through December 5, 2023, and beyond, (*id.* at 543); and (2) Dr. Li's October 31, 2023, finding, that, in fact, Plaintiff can only sit for at most two hours a day and requires a one-hour break every 30 minutes of sitting, (*id.* at 720). Based on this, Plaintiff pursued an appeal with MetLife on February 2, 2024. (*See id.* at 501, 505.) As part of the appeal, Plaintiff submitted a letter from Dr. Li (dated January 21, 2024), which stated:

> The pain in [Plaintiff's] groin area prevents her from sitting for more than 30 minutes or standing for more than 20 minutes at a time. She needs to rest for an hour between prolonged periods of sitting and standing to recover. She is most

comfortable lying down. . . . Based on her limitations and required breaks, **she is not able to work a full time [sic] position even with sit and stand option**. She has also tried to simulate [a] part-time workday at home but found that **she is unable to deliver consistent hours . . . due to her pain**.

(*Id*. at 503) (emphasis added).

After receiving Plaintiff's appeal, MetLife sent her claim to yet another IPC, Dr. Maria Mainolfi, M.D. (*See id*. at 480–91) (Dr. Mainolfi's report). Dr. Mainolfi then concluded that the restrictions and limitations, as observed by Dr. Molazadeh, were "not supported beyond 10/31/2023" because there was "no documented ongoing treatment for the claimant." (*Id*. at 458.) Dr. Li promptly opposed Dr. Mainolfi's finding and listed many examples of Plaintiff's "ongoing treatment." (*Id*. at 399–400) (Dr. Li's opposition letter). Dr. Li also reiterated, yet again, that "**Plaintiff requires time off from work to pursue further medical evaluation and treatment for severe right inguinal pain and bloating.**" (*Id*. at 400) (emphasis in original). Nevertheless, Dr. Mainolfi's conclusions remained unchanged, largely because Plaintiff failed to provide evidence of ongoing treatment *beyond* Dr. Li's statements, which Dr. Mainolfi deemed insufficient for purposes of her review. (*See id*. at 383–84) (Dr. Mainolfi's first addendum).

In response, Plaintiff provided Dr. Mainolfi with medical records of her various visits with the Mayo Clinic in Jacksonville, Florida, (*see id*. at 230–96), and pelvic health physical therapy notes from Swedish Cherry Hill Therapy in Seattle, Washington, (*see id*. at 103–34). These visits spanned from February 7, 2024, to March 19, 2024. (*See id*. at 103–34, 230–96.) But Dr. Mainolfi's conclusion was still the same. (*See id*. at 82–85) (Dr. Mainolfi's second addendum concluded that "[t]he timeframe of [restrictions and limitations] is confirmed to be 9/6/2023 to 10/31/2023."). Based on this, MetLife upheld its denial and did not allow for further review. (*Id*. at 56, 59.)

Plaintiff thus brings this action seeking a declaration of her right to LTD benefits. (*See* Dkt. No. 18 at 2.)

## II. DISCUSSION

### A. ERISA Standard of Review

ERISA allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). District courts review a plan administrator's denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties agree that the Court should review MetLife's benefits decision *de novo*. (Dkt. No. 12 at 1.)

Under *de novo* review, "'[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits.'" *Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006)). The review is limited to the evidence before the plan administrator except "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 (9th Cir. 1995).

Moreover, when the parties elect to proceed under a Federal Rule of Civil Procedure 52 motion for judgment, the court essentially conducts "a bench trial 'on the papers.'" *Kieserman v. Unum Life Ins. Co.*, 574 F. Supp. 3d 896, 900 (W.D. Wash. 2021) (quoting *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d. Cir. 2003)). That is, the court will ask "not whether there is a genuine issue of material fact, but instead whether [the claimant] is disabled within the terms of the policy." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999). It may then "evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Id.* Thus, the court may make factual findings, evaluate credibility, and weigh the evidence before it to determine whether the administrator correctly or incorrectly denied benefits. *See Anderson v. Liberty Mut. Long Term Disability Plan*, 116 F. Supp. 3d 1228, 1231 (W.D. Wash. 2015).

Similarly, the court must make reasonable inferences where appropriate. *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F. Supp. 3d 1237, 1251 (N.D. Cal. 2014). In turn, the court need not give deference to the claim administrator's decision. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295–96 (9th Cir. 2010).

Finally, a plaintiff challenging a benefits decision under 29 U.S.C. § 1132(a)(1)(B) bears the burden of proving entitlement to benefits by a preponderance of the evidence. *Id.* at 1294.

**B.  Benefits Determination**

After an "independent and thorough inspection"[2] of the record and benefits decision, the Court finds that MetLife incorrectly denied Plaintiff's LTD claim.

1.  <u>Plaintiff is Disabled</u>

Plaintiff has proven by a preponderance of the evidence that she is disabled. In fact, there is a bright-line rule in this circuit that "an employee who cannot sit for more than four hours in an eight-hour workday cannot perform 'sedentary' work that requires 'sitting most of the time.'" *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016). Here, MetLife itself classified Plaintiff's job as "sedentary demand work." (Dkt. No. 17-1 at 520.) MetLife's own IPC, Dr. Molazadeh, then concluded that Plaintiff was only capable of "Sitting: Frequently, for up to 4 hours per day." (*Id.* at 542.) As such, per MetLife's *own* findings, Plaintiff could not sit for more than four hours in her eight-hour sedentary workday. And thus, according to MetLife's *own* findings, Plaintiff is disabled as a matter of law. *See Armani*, 840 F.3d at 1163. Nothing in the record casts doubt on this.

For its part, MetLife argues that *Perez*, not *Armani*, applies to Plaintiff's case. (*See* Dkt. No. 25 at 6) (citing *Perez v. Lincoln Nat'l Life Ins. Co.*, 843 F. App'x 57, 59 (9th Cir. 2021)). In *Perez*, the Ninth Circuit distinguished *Armani* and affirmed the district court's entry of judgment in favor of the defendant because there was evidence that the plaintiff's "job could be performed by alternating sitting and standing." *Perez*, 843 F. App'x at 59. However, there, the "evidence in

---

[2] *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 728 (9th Cir. 2006).

the record" came from Perez's *own* supervisor, who indicated Perez's job could be performed by alternating sitting and standing. *Id*. Here, Plaintiff's own supervisor maintains that her position requires at least "7-8+" hours of sitting—much more than the four hours a day that even Dr. Molazadeh concedes is Plaintiff's maximum. (Dkt. No. 17-2 at 75.) Of course, the Court has not forgotten the conclusion from MetLife's VRC that "with a reasonable accommodation of a sit/stand desk [Plaintiff has] the functional capacities to perform each of the material duties of [her] Own Occupation." (Dkt. No. 17-1 at 520.) Nevertheless, the Court is confident that Plaintiff's own employer would know the requirements of her position better than that of a third-party evaluator. As such, contrary to MetLife's assertion, Plaintiff's case is distinguishable from *Perez*, and *Armani*'s bright-line rule continues to apply.

But even if *Armani*'s bright-line rule did not apply (or even exist), Plaintiff would still meet the Plan's definition of "disabled." A claimant is disabled under the Plan if, during the Elimination Period and beyond, the claimant is unable to perform the material duties of their Own Occupation or otherwise fails to earn 80 percent of their Pre-disability Earnings, even after complying with a treatment plan. (*See* Dkt. No. 17-2 at 492.) These conditions are satisfied here.

First, Plaintiff was incapable of performing the material duties of her "sedentary" job. MetLife, of course, concluded otherwise. It determined that Plaintiff's "positional tolerances are for combined sitting and standing up to 8 hours of the workday," thus allowing for a "reasonable accommodation of a sit/stand desk." (Dkt. No. 17-1 at 520.) But MetLife failed to account for the fact that she could only sit for 30 minutes at most before requiring a one-hour break to lie down. (*See id*. at 699.) As such, even if Plaintiff could sit for a total of four hours a day, as Dr. Molazadeh suggests, (*id*. at 542), it would ultimately take Plaintiff 12 hours just to complete these four hours of seated work.

MetLife also ignored Dr. Li's multiple warnings that these restrictions made it impossible for Plaintiff to work a full-time job, even with the option to alternate sitting and standing. (*See id*. at 400, 503.) These facts confirm that Plaintiff could not complete the material duties of her job

or otherwise earn 80 percent of her Pre-disability Earnings.

Second, Plaintiff's condition also clearly extended beyond her Elimination Period. Had MetLife originally approved Plaintiff's LTD claim, her benefits would have begun on December 5, 2023. (*See* Dkt. Nos. 17-1 at 519, 17-2 at 145) And indeed, MetLife's own IPC noted that Plaintiff's restrictions were warranted at least through December 5, 2023, and beyond. (*Id*. at 543.) Moreover, as late as February 26, 2024, Plaintiff still suffered from "severe right inguinal pain" and continued to require time off work. (*Id*. at 399–400.) As such, Plaintiff is disabled under the Plan's terms, and MetLife improperly denied her LTD claim.

2.  MetLife's Evidentiary Arguments are Unconvincing

Of course, MetLife argues that the evidence weighs against Plaintiff for many reasons. (*See generally* Dkt. Nos. 21, 25, 28.) However, MetLife's arguments require the Court to draw unreasonable inferences. As such, none are convincing.

First, MetLife downplays Dr. Li's credibility as Plaintiff's primary care provider. For instance, MetLife argues that the Court ought to give Dr. Li's determinations less weight because Dr. Li "started treating Plaintiff in July of 2023," which is only three months before Plaintiff submitted her initial LTD claim. (Dkt. No. 21 at 13.) And indeed, a court may give a treating physician less credit where "the relationship between the claimant and the treating physician has been *of short duration*." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (emphasis added). MetLife thus posits that three months is a "short duration." (*See* Dkt. No. 21 at 14.) The Court need not make this determination, however, because MetLife's factual assertion is not supported by the record. Indeed, according to the administrative record, Dr. Li has been Plaintiff's primary care provider since June of 2020. (*See, e.g.*, Dkt. No. 17-1 at 974, 982, 986, 991) (Plaintiff's relationship with Dr. Li started on June 17, 2020). Three years is more than enough time to establish a close relationship. In turn, the Court accords significant weight to Dr. Li's opinions given her extensive relationship with Plaintiff.

MetLife also asserts that Dr. Li's opinions lack credibility because Plaintiff essentially

told Dr. Li what to write in her various letters and reports. (*See* Dkt. No. 21 at 3.) MetLife would have the Court infer that Plaintiff "was orchestrating behind the scenes to push the conclusion that she was disabled by dictating the limitations" that Dr. Li ultimately documented in writing. (*Id*.) MetLife's only "proof" of this conspiracy, however, is that Dr. Li's office visit notes from October 31, 2023, her attending physician statement from the next day, and her January 21, 2024, letter in support of Plaintiff's appeal all *happen* to use the same language to describe Plaintiff's condition. (*See id*. at 3, 12–13.) MetLife ostensibly argues that Plaintiff must have fabricated her condition—or at least the extent of its severity—because Dr. Li used the same language multiple times to describe it. The Court declines to draw this inference. If anything, it is more likely that Dr. Li, as a qualified physician, witnessed Plaintiff repeatedly experiencing the same symptoms and felt that using the same language—rather than reinventing the wheel—would be the simplest way to keep record of it. After all, the primary function of medical records is to promote communication and recordkeeping for health care personnel, not to provide evidence for disability determinations. *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007).

  Finally, MetLife argues that, aside from Dr. Li, none of Plaintiff's treatment providers nor her medical records support her claims of disability. (Dkt. No. 21 at 3, 10, 12–15.) For instance, MetLife highlights that during a September 27, 2023, office visit, a provider named Nurse Bennett stated that Plaintiff "discussed many options for treatment before considering long-term disability." (*Id*. at 11) (quoting Dkt. No. 17-1 at 784). MetLife also emphasizes that during a physical therapy session on March 14, 2024, Plaintiff's physical therapist did not observe any functional mobility impairment. (*Id*.) MetLife posits that these notes contradict Plaintiff's claims. (*Id*. at 10–11.) The Court declines to adopt such a restrictive interpretation. That Plaintiff discussed other options before seeking LTD or that Plaintiff's physical therapist did not observe any functional mobility impairment has no bearing on the pain Plaintiff endured and its effects on her capacity to maintain full-time work. Moreover, MetLife's recounting of the record is incomplete—for instance, the notes from that same March 14, 2024, physical therapy session reflect "notable palpation findings:

pain with palpation" during an internal pelvic exam. (Dkt. No. 17-1 at 116.) This is wholly consistent with Plaintiff's claims of pelvic pain and dysfunction.

And, as with Dr. Li's repeated use of the same language to describe Plaintiff's condition, the Court emphasizes once again that the primary purpose of medical records is to promote communication and recordkeeping for health care personnel, not to serve as evidence for disability determinations. *See Orn*, 495 F.3d at 634. In turn, the Court is more convinced by Plaintiff's context-driven approach, which asks the Court to infer that Plaintiff's other treatment providers already "understood that she was not working and never questioned if medical leave was warranted" when they prepared their own notes. (Dkt. No. 22 at 12.) That is, these providers were already aware of Dr. Li's recommendations and likely did not feel the need to restate her conclusions in their own records. Thus, contrary to MetLife's assertion, the Court finds that the medical record—when viewed in its entirety—actually complements Plaintiff's claim of disability.

### III.  CONCLUSION

For the foregoing reasons, the Court DECLARES that Plaintiff is disabled as that term is defined in the Plan. Accordingly, Plaintiff's motion (Dkt. No. 18) is GRANTED and MetLife's motion (Dkt. No. 21) is DENIED. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff and against MetLife.

DATED this 29th day of January 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C24-0827-JCC
PAGE - 11